The next case on our argument calendar is Heath v. Garcia v. Mirabal. Dan will hear first from Bob Pellin. Good morning. May it please the court, counsel. My name is John Justice and I represent the appellants, Lieutenant Michael Hawley and Deputy Robert Mirabal. I'd like to reserve five minutes for rebuttal. Okay. Yeah, please watch your time. I'll try to remind you a few. Thank you. Thank you. This is an appeal by Lieutenant Michael Hawley and Deputy Robert Mirabal from denial of qualified immunity by the district court. This appeal presents an issue of law. Namely, when construing the facts and drawing all inferences in favor of plaintiffs, whether the evidence demonstrates a constitutional violation by the officers and whether such violation was in contravention of federal law that was clearly established at the time. This court has stated that the qualified immunity defense allows for mistaken judgments and protects all but the plainly incompetent and those who knowingly violate the law. Lieutenant Hawley and Deputy Mirabal assert both prongs of the qualified immunity defense regarding the clearly established prong. The rule established by existing precedent must be so well defined that it is clear to a reasonable officer in the situation that he or she confronts that what they're doing is unconstitutional. Put another way, the salient question is whether the state of the law at the time of the event gave Lieutenant Hawley and Deputy Mirabal fair warning that their alleged actions were unconstitutional. If the answer to this question is no, they are entitled to qualified immunity. There are two constitutional claims being asserted in this case. The first is under the 14th amendment against both officers and the second is under the fourth amendment against Deputy Mirabal. The 14th amendment, as this court is aware, does not require the state to protect citizens from harm by private actors. The state created danger doctrine is a court created exception to this rule and has been applied when the government acts affirmatively to place someone in danger and is deliberately indifferent to a known or obvious danger that has been created. Could we talk about Hawley as to this claim? So if we take plaintiff's version of the facts, didn't Hawley say he would have the officers retreat off the yard and didn't he in fact not do that on plaintiff's version of the facts? And if so, why isn't that a misrepresentation that increased the danger? Well, I would agree with the court that is an allegation that the plaintiffs have made under their asserted facts that Lieutenant Hawley said he would pull officers back but not leave. And that was communicated to Mr. Perkins who was inside the house. The question raised by this appeal is whether or not that in and of itself satisfies the state created danger exception. The cases preceding this, the cases upon which the courts in this circuit have ruled. So hold on just one step at a time. So he told them that he said he would have the officers retreat back and then didn't actually is part of the allegation, I think, because officers are in the bushes right at the door instead of being back. So it's both. He said they'd be back and then didn't have them go back. And so why isn't that? So let's start with that. Do you agree that that's plaintiff's allegation of the facts? I would agree with that. Okay, so then go ahead with why you think that's not clearly a violation of clearly established law? Because the case law that has been cited by the district court and by the plaintiffs dealing with promises made are promises to protect. And that's in the Kennedy versus Ridgefield case. I think it's just isn't Kennedy just a promise to give notice before they talk to the neighbor? Why is it a promise to protect? Actually, Kennedy, the police, according to the plaintiffs, promised to give them warning before they told this juvenile who is known to be dangerous, but also to increase police protection to the plaintiffs in which they didn't do that. And so it was both a failure to notify the plaintiffs and failure to provide police protection. This is kind of the flip side of that. It's too much police protection and a failure to tell Perkins that that was what was going to happen. So why isn't that analogous? Well, the the the obligation of the promise that was made in this case was apparently allegedly made to Mr. Perkins. If you come out of the house, get in the ambulance, go to the hospital. Well, according to plans, pull officers back but not leave the scene. Mr. Garcia, there was no promise to protect Mr. Garcia made at any point in time. I think that is the distinguishing factor in this case in the in the cases in which, for example, the jails, the L.W. versus Grubb case, for example, the court said that there was essentially a promise to protect the employee in a jail and then a failure to do so. But I'm not sure why the to whom the promise is made matters. Let's say it's you promise person A that you'll disarm someone who's trying to shoot them and they're standing next to person B. You're saying that person B has no opportunity to bring a claim for a state created danger. If if the other criteria are met, that that hasn't been the fact pattern that has been cited in any other cases before the court, your honor. The cases involving the state created danger doctrine is owed to a specific person to which the promise to protect was made. And that's the person that then brings the claim. And that's where I think there is a distinction in this case, because Mr. Garcia was not the person who the police promised to protect. If any promise was made, which, you know, that's the plaintiffs have alleged it was not to protect Mr. Perkins or Mr. Garcia. It was to move officers back. And Mr. Perkins then would get come out of the house and go get an ambulance. Well, I'm not sure why that's true, because in Garcia's declaration, he's he's the one who discussed with Lieutenant Hawley how to get Perkins out of the house safely. I'm looking at ER 112. Lieutenant Hawley agreed to have his deputies pull back, et cetera, et cetera. And he says he met with Lieutenant Hawley to discuss the plan. So I'm not sure why you think there's not a promise to Mr. Garcia. The communication was to Mr. Garcia. I would agree with the court on that. Lieutenant Hawley was allegedly speaking to Mr. Garcia. But the the information, according to Mr. Garcia, was that Mr. Perkins wanted police pulled back off his property as a condition of coming out of the house voluntarily. And Lieutenant Hawley conveyed that, according to Mr. Garcia, the police would pull back but not depart the scene. But he made that promise to Mr. Garcia in order to facilitate peaceful resolution of the problem. He didn't make it directly to Mr. Perkins. That is correct. It's our position that the cases, the broken promise cases, L.W. versus Grubb and the Kent versus City Ridgeville case are promises to protect. So I'm reading Kennedy again, and I don't understand how you're reading it that way. So there was a statement that they would protect. But the court very clearly says that there's no obligation to protect. So saying you're going to protect and not protecting isn't the problem. The problem was that they said they would tell them before that they would notify her first so she could protect her family before telling the neighbor. And instead they did in the other order. That's and the last paragraph of the discussion of the deliberate indifference is exactly that. So I don't I don't understand. Let's just say for a second that what Kennedy says the problem is, is the the misrepresentation about the order in which they would notify people that before telling the neighbor they were going to notify her. We're about to tell the neighbor. And instead they did it the other way. If that's what Kennedy says was the violation, then why isn't that just a broken promise like we have here? Well, I think again, I think it does come down to the police agreeing to to do something to a specific person in terms of protecting that person, not somebody else. I think that does make a difference in this case. But then. Well, but in this case. OK, so fine. I mean, the two specific people were Garcia and Perkins, right? They were the ones who were going to come out of the house and there could be shooting or whatever if it doesn't all work out. Why can't you have a promise to two people? Well, you could. I think I think the other thing that takes this case out of prior precedent is that Mr. Garcia in a situation where he was observing all of this happening. Mr. Perkins has a shotgun. He's upset. He's angry at the police. He at that point creates the danger that led to his injury. I think that is a difference in this case is that the danger didn't exist until Mr. Garcia grabbed Mr. Perkins. Well, why isn't that a factual question for the jury? I mean, why can't a jury think, no, the the danger got created when the officer broke his promise about having the other officers pull back? You say, no, that wasn't actually so dangerous. It would have been fine, except that he bear hugged him. I mean, that seems very factual. Like, where did things go wrong here in terms of the risk? Why isn't that a fact question? It very well may be a fact question at trial. But the question for qualified immunity is whether or not the danger created was the but for cause of the injury. Yeah, but assuming the facts in favor of the plaintiff, I think we have to assume that the danger was created when the officers didn't retreat from the yard as promised. Then the question is whether or not a reasonable officer would understand the case law to be that that that way back in 2017 when there was no danger to Mr. Garcia until he grabbed Mr. Perkins. Well, that's your factual take on the case. Now you're begging the facts, which we can't do at this stage, right? Well, I think the facts matter in terms of an officer understanding what the law requires of them. Well, I think the law requires him to keep a promise that he's made to someone who thinks that that promise will enhance their safety in a dangerous situation. So, you know, keeping your word is not really that difficult a concept, is it? It's not a difficult concept. But if you're looking at whether or not a person violates the Constitution versus a state law negligence claim, for example, the qualified immunity defense does make that important for the officer to understand that what they are agreeing to could have constitutional implications. And prior to the prior cases were were promises to provide protection to individuals. And so your argument depends on us reading Kennedy that way. Well, certainly that's part of the reasoning in Kennedy. I think that the court does allude to both the failure to notify the plaintiffs before notifying this juvenile and also not stepping up protection to the plaintiff's home, which that that was referenced in the case as well. And that wasn't done. And L.W. also. So we must accept Kennedy's evidence that Shields assured her that the police would patrol the neighborhood that night, as in Grubbs. Oops. As in Grubbs, we do not rest our judgment that Shields affirmatively created a danger on that assurance alone. I mean, I think the court specifically says the promise to protect is not really the core of the problem here. It may not be the only reason for the court's ruling. I'll grant you that. It may be that the court rested primarily on the police not notifying them first before they notified the juvenile. But the promise there was a promise to protect in that case and in the cases and implied promises to consent. We have an employee working in a jail. There was no promise to protect here. And I think that is significant when you say to an officer, if you promise to protect somebody from harm and then you don't, that can have constitutional implications. And the difference in this case is this is a non-criminal situation. Person suicidal, allegedly coming out of their own home to get mental health care, essentially. And for an officer to understand that simply saying allegedly we will pull officers back creates a constitutional obligation to Mr. Garcia is not, I think, a fair reading of the prior case law. And that really is what the qualified immunity argument comes down to in this case is whether Lieutenant Hawley would understand that by simply agreeing allegedly to pull officers back so that Mr. Perkins would come out of the house voluntarily, not a criminal, and go get health care that he is now bound by the Constitution to do so. And that's where we believe that qualified immunity arises in this case for Lieutenant Hawley. I want to turn with my brief period of time that I have left to talk a little bit about Deputy Mirabal. And Deputy Mirabal, in the context of the state carried a danger doctrine, I think falls into a much different category. He was not part of any, allegedly, any agreement to remove the officers back. There's no claim or allegation that that was the case. For him, it's the officer, excuse me, the court relied on, the district court relied on the fact that Deputy Mirabal responded in a split second to Mr. Garcia's request to come in and assist him with Mr. Perkins, who was armed at that point with a shotgun. Putting aside the fact that there is no case remotely similar under the state created danger doctrine to Deputy Mirabal's situation, there's also no real evidence that he could have had deliberate indifference because of the split second nature of the decision. So as to Deputy Mirabal, we believe the state created danger doctrine does not apply. And then lastly, well, I'm out of time. If I can use a couple minutes, I'll just save three for rebuttal and talk about Deputy Mirabal and the Fourth Amendment. Would that be okay? How much time? I'll save three minutes, and so I'll use two more minutes on my primary time, if that's okay with the court. No, the time was your total time, including rebuttal. Oh, I used 15 minutes. Okay, I thought it was set to 10. Well, I apologize. Time's all up, but I'll tell you what. I'll give you an extra two minutes to make a rebuttal argument. Thank you, Your Honor. Appreciate it. And if the appellee wants an extra two minutes, too, you can just ask for it. Thank you, Your Honor. If it pleases the court, my name is Tim Ford. I represent Heath and Valerian Garcia. A lot of times what happens in these qualified immunity appeals is just what we're seeing now. It turns into factual questions. The question of whether at the time he walked out with Mr. Perkins, after Mr. Perkins had been barricaded in the building, the police had run out of the building because of the guns that he had and the mood he was in, and they had made arrangements for the police to move back because Mr. Perkins had made it clear that if the police didn't move back, something awful might happen. Mr. Garcia was in danger. Everybody says he was. The books say he was. Our experts say he was. The sheriff of Island County says, yes, this is a risky situation. This is a barricaded person. They have rules about this, even in Island County. There was a danger there to begin with. But then this whole question, now we fall into another factual question of causation because their argument now is, well, there was no real danger until Mr. Garcia grabbed Mr. Perkins unexpectedly. Counsel, my concern with your side of the case has to do with whether the law was clearly established at the time of these events because some of the most analogous cases came later. Hernandez and so forth all post-dated the events in this case. And we've often said that a high level of generality of a rule isn't good enough unless there's a closely analogous situation. So why are the only two cases, I think, really that predated it are Kennedy and Grubbs, as I recall, and why are they sufficiently close in terms of similar circumstances to have put every reasonable officer on notice that this would be a violation? You know, on this point, I actually agree with counsel as to the significance of the different facts in Kennedy and Grubbs. And also we've cited this Ogie case, which is, of course, a memorandum decision, not presidential, but applies the same rule. In all three of these cases, you had, I think, both. You had the officer allowing or placing the person into a dangerous situation already and then saying, I'll protect you there, and then not doing it. That's the combination that is straightforward and simple that any officer should know. And remember, doing that with deliberate indifference to the safety of the person. There's no argument here. Well, the Supreme Court keeps telling us that precedent has to be particularized and that a high level of generality won't do. And we also have memorandum dispositions that say that Kennedy and other similar cases about state-created danger are too general to fit the facts of those cases. So I guess what I'm looking for is your best pitch as to why the circumstances in those cases were sufficiently similar. And that is, I think, my pitch. My pitch is if an officer puts a person in a dangerous situation and then makes a promise that they will alleviate that danger by their actions and then doesn't follow through with that promise with deliberate indifference to the safety of the person, that's not in dispute here. But do you think that's good enough for the Supreme Court to just have that general statement? I do. And here's why. Almost all these Supreme Court cases are Fourth Amendment cases or Eighth Amendment or analogous cases from the jail where officers are doing their normal duties. They're arresting people. They're holding people in custody. They're using force. They're denying liberty as they properly can under certain circumstances. In those circumstances, the lines need, I think, to be much more carefully drawn than in a situation like this one where the officer is way out of bounds. He is doing something that is against their policy. It's against every bit of them. Well, we know that being against a department policy is not equivalent of a constitutional violation without something else. Of course. But when you're doing that, and in doing that you create a danger to a person, and then you tell that person, I'm going to protect you, and then you are deliberately indifferent to that person's safety and you don't protect them and they are harmed in just exactly the way that they were fearing they would be harmed, I think that is close enough. So can I just ask you, I'm a little confused about how you're dividing up the facts here. So I had understood the creation of the danger here to be the promise to pull back the officers. I'm talking about Hawley. The promise to pull back the officers and then not doing that. Are you calling that promise to protect, though? I don't understand. Where is your promise to protect in these facts? There. You're calling that a promise to protect? He's already put him into a highly dangerous situation. What did he do to put them into the dangerous situation? He encouraged him to go back into that building a third time and try and walk Mr. Perkins out. Everybody says that's an extremely dangerous thing. I thought on your version of the facts he basically agreed he could go back in, but did you think he told him to go back in? I don't see that in your facts, I didn't think. Mr. Garcia's declaration says that what Lieutenant Hawley said was, well, maybe we'll just leave and see what happens. And Mr. Garcia felt at that point he had no alternative. He said, wait a minute, you can't just do that. I'll go back in. If you pull away, he won't cause this problem. I will try and bring him out. That was, we believe, more than just allowing. It was encouragement. But, you know, Lieutenant Hawley was. I'm having trouble seeing that, I have to say. I mean, it seems like I had understood your best argument to be they promised to withdraw and then didn't, and that created the danger and the whole problem. This whole idea that they actually told him to go in as opposed to just didn't stop him from going in or agreed it would be okay if he went in when he wanted to go in. I'm not sure the declaration really supports some sort of affirmative telling him to go back in. Well, it certainly supports that he allowed him to go back in. He was in control of the situation. And every police procedure book in the world, including Island County's own, every expert says you never, ever do that in a barricaded subject situation. He put him in a dangerous situation. So you think the officer should have held Garcia and not let him go back in? He said you can't go back in there. We're in control of the situation. We're surrounding this building with guns. You're in flip-flops and shorts. If we're telling you don't go back in there, you leave. And if you don't, then you arrest him because that's what happens. That's what happens at scenes sometimes. People try and go into these places, and they have to be restrained because it's too dangerous. So you do think they should have restrained him? I think they should have told him no. They should have said you can't do that. Our procedures say you can't do that. Everybody says you can't do that. It's too dangerous. But then on top of that, to say, but don't worry, we'll pull back so he won't see anything and he won't panic. And then an important fact that gets lost here, Mr. Garcia did not, as counsel was saying, just all of a sudden unexpectedly grab Mr. Perkins. Mr. Perkins grabbed a shotgun after he saw these officers in the bushes where he had said don't be there, and he started screaming. And Mr. Garcia said, well, I'm looking at a situation where somebody's going to get killed. I've got to do something. And he grabbed Mr. Perkins. I don't know if that was the best solution or not, but it was certainly a predictable solution. Certainly Mr. Perkins grabbing the gun was exactly the kind of thing they were afraid of when they said don't let the police see him. So I think that combination is there. And the reason. Can I ask? So I understand. I think I had had a different understanding of your argument against Holly, but I know you're bringing a state-created danger argument against Holly of some sort. What about the other officer? Are you bringing state-created danger as to, sorry. Mirabal? Mirabal. We did not make the argument that this court relied on with regard to Mirabal. We thought Mirabal was part of the overall creation of the danger by not moving back. But he also committed this Fourth Amendment seizure. And I think in Graham versus O'Connor. As to Mirabal, should we focus only on the Fourth Amendment claim? Graham versus O'Connor says if it's a seizure, then it's Fourth Amendment, not 14th. And so if it's a seizure, why should we view it as an unreasonable one? So I understand he should have put the gun in a lock. But why was coming to help what he thought he was doing not a reasonable thing to do under the circumstances? Well, they haven't argued otherwise because everybody says. He says, I would have never done anything that crazy and that stupid. That's what Mirabal says. He denies he did it. Well, he thought his. He says he thought that there was a safety on. He said the safety was on because I would have never been crazy enough to go into that situation. So why isn't that just negligence? I mean, it seems like the seizure is him coming and taking them to the ground. Why wasn't that a reasonable thing to do? If he'd just come and taken him to the ground with no live weapon around him, it would have been a reasonable seizure. But if you do something in an unreasonably dangerous way, you know, then if you crash the car and knock him over a cliff, it might have been reasonable to stop the car. But if you do it in an unreasonably dangerous way, that's unreasonable. They haven't argued otherwise. There's no testimony that there's anything, but this is an unreasonable manner of seizing these two people. Their argument always has been, well, Mr. Garcia wasn't seized because I didn't really mean to seize him, even though I tackled him to the ground. And that kind of argument is long gone. After Brendlin versus California and Brower versus Ineo, the court has said, no, if by a single act you seize two people, then the question, both of those people have been seized. But the intentional thing was taking the two people to the ground. He didn't intentionally shoot anyone, right? You're not claiming he intentionally shot anyone. No, we're not. We're saying that when he took the people to the ground, that was a seizure. And when he did so with a gun strapped around him that had the safety off and could be fired multiple times without anything but a touch on the trigger, that that was an unreasonably dangerous way to do it. And we don't know who actually fired that gun. They say it was Mr. Perkins, but it was a brawl, and there's questions factually about whether that's possible. I don't think it matters. What matters is bringing a gun into a physical struggle is an unreasonable thing to do. And if it's a seizure, then it's an unreasonable seizure. And if it was accidentally unlocked, you still think that that makes it an unreasonable seizure and isn't just some sort of negligence? If they said, oh, gosh, I accidentally left it unlocked, but he said, I fixed it, and I would never have gone in there otherwise. Well, so doesn't that mean he accidentally had it unlocked because he says he would never have done it otherwise? He must have accidentally not had it locked. Well, I think if he says, I on purpose made sure it wasn't the case, and there's evidence that, no, he didn't, that's not true, I don't think then he's entitled to the inference of, oh, gosh, he must have just been mistaken. He may be lying. We're not stuck with that inference. We don't have to give him the benefit of the doubt if our circumstantial evidence disproves what he has possibly said he did. Your circumstantial evidence doesn't prove his state of mind one way or another. The bullets happen whether it's accidental, whether in the struggle the safety is dislodged, or whether he deliberately went in there with it loaded and ready. The fact that it went off doesn't prove anything about whether the safety, he thought the safety was on. No, the circumstantial evidence is from one of our experts, Your Honor, who talks about the exact positioning of the safety and the trigger on this particular kind of rifle and what it would take to manage to take the safety off and then get to the trigger and pull the trigger during this struggle. And, you know, it's not positive. Nobody knows for sure, but it's extremely unlikely that Mr. Perkins could have done that. It is very likely that that safety was off. And Officer Mirabal doesn't say, oh, I didn't have time, I didn't have time to check, it must have been a mistake. He said that safety was off and I would not have gone in there otherwise. And if he did so, that's unreasonable and it's an unreasonable seizure. But basically if he's lying, it's unreasonable is what you're saying. Well, if he were to come around now and say, gosh, it's an honest mistake, you know, this is a really tricky safety and it looks like it's on when it's off, then maybe a jury could say, okay, it wasn't unreasonable. But right now, certainly there's no proof it was not unreasonable. Everybody says nobody should ever do it this way and he did it this way according to our evidence. So that, to me, is at least enough to get to a jury on whether something is unreasonable. And, again, they haven't argued this. They have not argued, they have not disputed unreasonableness. They have not disputed deliberate indifference. And I would like to talk a little bit about that in the 14th Amendment versus the 4th Amendment because we have questions about qualified immunity. But if you think about it, what really starts to become crazy making is to say, well, the 14th Amendment, the ultimate touchstone is shocks the conscience. Well, okay, this officer did something that shocks the conscience. But a reasonable officer might believe that it was okay to do something to shock the conscience. That can't be so. When the 14th Amendment establishes that high a level of culpability, of deliberate indifference, and certainly in terms of notice, an officer can't say, well, yeah, I was deliberately indifferent to whether they were safe, but, you know, gosh, I didn't really know that that was a problem. It's a problem. When you put somebody in a dangerous situation, make a promise, and then with deliberate indifference, shocking to the conscience, you break that promise, and exactly what they feared happens, and they are badly injured, that is a valid 14th Amendment claim, and it's close enough to these other claims because these don't occur. State-created danger doesn't occur in the routine business. It's all different kinds of things, people out of bars, and I'm done with my time, so I will stop. But I don't think that the same level of precision is required there, and I think to apply it makes no sense given the standards of culpability here. Mr. Ford? Yes, sir. I'm giving the appellant two extra minutes, so if you need another minute or two. Thank you, Your Honor. Unless the Court has any other questions, that's really our case, and I really think if the facts are not changed from what they were shown to Judge Uzzelli about the magnitude of the danger that this was and the way that this came down, I think these were valid rulings. Your Honor? I don't have any more questions. No? Thank you. Thank you very much. Thank you. Thank you. Very briefly, and thank you, Judge Gould, for giving me an opportunity to come back up here, I'd basically like to ask the Court if it has any questions about the Deputy Mirabal portion of the Fourth Amendment because our position that the cases cited below deal with automobile seizure cases. Those cases did not provide Deputy Mirabal. Notice that rushing in to help someone who's called for help in subduing an armed person can constitute a seizure under any cases that have been cited. So let's assume that tackling and taking to the ground is a seizure. What do we do then? The cases I think you look at say, what is the objective intent conveyed by the action? Not the subjective intent of the officer, but the objective intent conveyed by the action. In the cases we cited, the Childress case, for example, talks about if someone is a hostage and they're being held hostage and the police act to rescue a person from a hostage and injure the hostage in the process, that's not a seizure of the hostage. That's not within the Fourth Amendment. I think that's exactly what happened here. Deputy Mirabal was not, his actions were not objectively to restrain Mr. Garcia under no reasonable construction of the facts. They were to assist Mr. Garcia and in the process he got knocked to the ground. There's no evidence that he grabbed Mr. Garcia or restrained him. He went in there and they all went to the ground. So there is a distinction between the cases where the officers are stopping a car and shoot the driver of the car. They've seized every passenger in the vehicle. That's established case law. But the cases that I think are more analogous are the hostage cases, and that's what Deputy Mirabal... And so in your view, is it irrelevant whether he had the gun on on purpose? Well, the seizure, according to what the district court decision was, was coming in and making contact with Mr. Garcia and him going to the ground, not the weapon being fired later on, which nobody claims that Deputy Mirabal intended or did shoot Mr. Garcia. So that would be that the contact only was the alleged seizure in this case. I'm afraid... Thank you, Your Honor. I ask that this court reverse the district court's denial of qualified immunity. Thank you. Thank you very much. I want to thank both counsel for their excellent arguments. It's a challenging case, and we appreciate your help in deciding it. The Keith Garcia v. Mirabal shall now be submitted, and the court will adjourn for the day. All rise.
judges: GRABER, GOULD, FRIEDLAND